DOROTHY GLENN COAL MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89934.   Promulgated November 15, 1938.

*Arthur S. Dayton, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

TURNER: In its 1933 and 1934 income tax returns the petitioner claimed depletion deductions computed on the unit basis. The respondent disallowed the deductions on the ground that the lease had no cost to petitioner within the meaning of the statute. The petitioner now admits that the respondent is correct and that it is not entitled to depletion computed on the unit basis, but contends that its claims for depletion in those returns were made in good faith and under a misap-

prehension of fact and law, and for that reason it should now be allowed to have a depletion allowance computed on the percentage basis. The respondent's position is that petitioner has made binding elections under sections 114 (b) (4) of the Revenue Acts of 1932 and 1934 to compute its depletion allowance for the years here in question without regard to percentage depletion and that it can not now make a new election and claim depletion on that basis.

Section 114 (b) (4) of the Revenue Act of 1932 [1] provides that the allowance for depletion in the case of coal mines shall be 5 per centum of the gross income from the property, provided such allowance shall not exceed 50 per centum of the net income of the taxpayer from the properties, "except that in no case shall the depletion allowance for the taxable year 1932 or 1933 be less than it would be if computed without reference to this paragraph." It further provides that a taxpayer making a return for the year 1933 shall state in such return whether he elects to have the depletion allowance for such property "for succeeding taxable years" computed with or without reference to percentage depletion, and that if the taxpayer fails to make such statement in the return, the depletion allowance "for succeeding taxable years" shall be computed without reference to percentage depletion.

With respect to 1933, the respondent has apparently interpreted the statute as requiring some act on the part of a taxpayer as a prerequisite to the allowance of percentage depletion for that year. Obviously the statute does not so provide. As we pointed out in the preceding paragraph, the allowance of percentage depletion for 1932 and 1933 is outright and the right of a taxpayer to take percentage depletion or unit or cost depletion, whichever will give him the greater deduction, is carefully and plainly stated. There are some provisions of the statute which may operate to limit the amount of the deduction, but

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance for depletion shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance for the taxable year 1932 or 1933 be less than it would be if computed without reference to this paragraph. A taxpayer making return for the taxable year 1933 shall state in such return, as to each property (or, if he first makes return in respect of a property for a taxable year after the taxable year 1933, then in such first return), whether he elects to have the depletion allowance for such property for succeeding taxable years computed with or without reference to percentage depletion. The depletion allowance in respect of such property for all succeeding taxable years shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for succeeding taxable years shall be computed without reference to percentage depletion. \* \* \*

# 1158

there is no limitation whatever as to the years mentioned of the right to take one or the other. If the allowance is computed on the percentage basis it may not exceed 50 percent of the net income from the property, while, on the other hand, a taxpayer may not be required to compute his depletion allowance on the percentage basis if it results in no deduction or in a deduction less than it would be if computed on the unit or cost basis. Furthermore, if there were any ambiguities in the statute or doubts as to its meaning they would be immediately removed upon examination of Report No. 665 of the Senate Committee on Finance, dated May 9, 1932. With respect to section 114 (b) (4), the report reads in part as follows:

* * * In respect to the taxable years 1932 and 1933 the taxpayer is privileged to have the greater of either (1) the percentage depletion allowance or (2) an allowance computed on the adjusted basis provided in section 113 (b) (usually cost or March 1, 1913, value, with adjustments). This privilege is the same for those two years as that accorded both under the existing law and the bill in the case of oil and gas wells for all years.

In the return for the taxable year 1933, however, the taxpayer is required to state as to each property whether he elects to have the depletion allowance for such property for succeeding taxable years computed with or without reference to percentage depletion; this election must be as between either percentage depletion or depletion computed upon the adjusted basis. * * *

There is no room for doubts as to the intent and meaning of the statute. The right of a taxpayer to take percentage depletion or unit or cost depletion, whichever would give him the greater deduction, was for 1932 and 1933 unconditional, and for 1933 that right was in no way affected by the fact that petitioner did claim on its return for that year a depletion deduction erroneously computed on the unit or cost basis.

For the year 1934 and all years subsequent to 1933 the provisions of the controlling statute are quite different. As to those years there was no outright or unconditional grant of alternative depletion allowances as was true for 1932 and 1933. Percentage depletion was put in reach of the taxpayers for 1934 and subsequent years but was not unconditionally provided. The allowance of percentage depletion for 1934 and subsequent years is governed by section 114 (b) (4) of the Revenue Act of 1934,[2] the effect of which we considered in *C. H. Mead Coal Co.*, 38 B. T. A. 1163, promulgated of even date. The instant case

---

[2] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

   *       *       *       *       *       *       *

(b) BASIS FOR DEPLETION.—

   *       *       *       *       *       *       *

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the prop-

is similar to the *Mead* case in that the petitioner made no claim for percentage depletion on its 1934 return and a proper computation of the depletion allowance on any basis other than the percentage basis will not result in a depletion deduction. It is unlike the *Mead* case in that the petitioner here affirmatively claimed depletion on the unit basis and has not at any time made a request in connection with any return, amended or otherwise, for percentage depletion. In *C. H. Mead Coal Co.*, *supra*, we held that, since the petitioner failed to make an election in respect of depletion on or at the time of filing its 1934 return, it lost the opportunity to take percentage depletion, and, the method of computing depletion having become fixed under the statute, it was not thereafter changed or affected by the later filing of an amended return wherein percentage depletion was claimed. The reasoning in that case is equally applicable here and points to a conclusion contrary to that contended for by the petitioner. In the *Mead* case, however, the petitioner in effect conceded that if percentage depletion was to be obtained a taxpayer was required by statute to make an affirmative election to that effect on its return even though, having no cost basis, he could obtain a depletion deduction on the percentage basis only, the contention of the petitioner there being that an affirmative election stated on an amended return was an election within the meaning of the statute. In this case the petitioner argues that, even though it did not on any return elect to take depletion on the percentage basis but did in fact claim a depletion deduction on the unit basis, it is still not precluded from claiming and obtaining percentage depletion in this proceeding in view of the fact that the computation of depletion on any basis other than the percentage basis will not result in a deduction to it. The petitioner's reasoning is that two remedies or rights must actually exist and if a party elects to take a supposed right or benefit which is in fact nonexistent he is not precluded thereby from later claiming the other. We are not here concerned with the doctrine of election of remedies, however, but with a question of statutory allowance of a deduction from gross income, and, as we have pointed out in *C. H. Mead Coal Co.*, *supra*, the allowance of a deduction is a matter of legislative grace and Congress may prescribe such prerequisites and conditions for the allowance thereof as it sees fit

---

erty. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section.

**1160**

and a claim for deduction must come clearly within the conditions prescribed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, and *Independent Life Insurance Co.* v. *Helvering*, 292 U. S. 371.

Prior to the Revenue Act of 1932 there was no provision in any of the revenue acts which would permit the owners of coal properties or leases thereof to take a deduction for depletion on the percentage basis. Up to that time Congress had seen fit to limit the owners of such properties to deductions for depletion computed on the unit or cost basis, and if any such property had no unit or cost basis in the hands of the taxpayer no deduction was allowed. Percentage depletion has been allowed in the case of oil and gas wells since the enactment of the Revenue Act of 1926, and from its inception its applicability to properties having no cost basis has been recognized. Accordingly, if Congress had made an outright grant of percentage depletion in the case of coal and metal mines as it had done in the case of oil and gas wells, there would be no question but that the petitioner here should be sustained but, as we pointed out in *C. H. Mead Coal Co.*, *supra*, the outright grant of percentage depletion was made for 1932 and 1933 only. If a taxpayer desired percentage depletion for subsequent years, he was first required under the Revenue Act of 1932 to so state in his return for 1933. By the terms of the Revenue Act of 1934 Congress extended the time in which a taxpayer was required to make such a statement with respect to 1934 and subsequent years to the time of filing the 1934 return. In each of the acts, however, Congress in positive terms prescribed the time and conditions on which the right of a taxpayer to the depletion allowance computed with or without regard to percentage depletion should become final and fixed, by stating that "If a taxpayer fails to make such statement in the return the depletion allowance  *  *  *  shall be computed without reference to percentage depletion."

The language of the statute is general and all-inclusive. There are no exceptions. It draws no distinction whatever between properties having a cost basis and those that do not. The depletion deduction was originally designed as the medium through which the owner of a mineral deposit or other "natural resource" might set aside free from income tax so much of the proceeds from the exploitation of the property as would by the time of exhaustion return to him his cost or investment therein. Prior to the enactment of the Revenue Act of 1932, the owners of coal properties having in their hands no cost or unit basis were denied any depletion deduction in respect of such properties and we are unable to find any provision of the Revenue Act of 1932 or 1934 granting percentage depletion for years subsequent to 1933 to the owners of such properties except under the conditions plainly stated in the statute. We

can not ascribe to Congress a lack of knowledge of such cases or any intention to exempt such property owners from the necessity of making an affirmative election at the time of filing their returns for 1934 if they are to obtain percentage depletion.

In the instant case it is stipulated that the petitioner did not elect in its return for 1934, or for any year, to have the depletion allowance in respect of its property computed on the percentage basis. After the enactment of the Revenue Act of 1932, in which percentage depletion was first allowed in respect of coal, metal, and sulphur mines, petitioner did file returns for 1933 and 1934 and on each return claimed a depletion deduction on the unit basis. Accordingly, if an election was made it was an election to have the depletion allowance computed without regard to percentage depletion. If, on the other hand, it is not possible, as the petitioner contends, for a taxpayer to elect to take depletion on the unit basis when on the unit basis no deduction will result, the petitioner is in the position of having failed to make any election with or without regard to percentage depletion, and under such circumstances Congress has said "the depletion allowance * * * shall be computed without reference to percentage depletion." *C. H. Mead Coal Co.*, *supra*. The petitioner has lost no deduction to which it was at any time entitled, but through its failure to act as Congress prescribed has failed to obtain an added deduction.

The respondent also contends that for the year 1933 it makes no difference whether petitioner is entitled to percentage depletion or not because in any event it had no net income "from the property" upon which to compute the 50 percent limitation prescribed in the statute. He has determined that petitioner sustained a loss from mining operations in that year in the amount of $3,005.88. The petitioner contends that the term "income from the property" as used in the statute includes income from its store and tenements and in the alternative that the respondent erred in failing to allocate to the store and tenements a part of the royalties, and further for 1934 that the amount of officers' salaries allocated to the said store and tenements is inadequate.

It is well settled that in computing the depletion allowance on the percentage basis income from other sources or activities may not be included as "income from the property." *Consumers Natural Gas Co.*, 30 B. T. A. 1263; affd., 71 Fed. (2d) 161; certiorari denied, 296 U. S. 634. The petitioner's claim for the inclusion of income from the store and tenements as "income from the property" is accordingly denied.

With respect to the alternative contention that part of the royalties paid should be allocated to the store and tenements, the petitioner relies upon a statement in *Burnet* v. *Hutchinson Coal Co.*, 64 Fed. (2d) 275; certiorari denied, 290 U. S. 652, to the effect that coal mining roy-

alties are paid for privileges more extensive than the mere mining of coal and may include other considerations such as the right to erect the plant, the right to erect houses for the miners, etc. The question in that case was whether a minimum royalty paid during the year in excess of the royalty on coal actually mined was deductible by the lessee in the year expended or should be treated as a capital expenditure, a question quite different from the one under consideration in the present case. Assuming without deciding, however, that the same reasoning is applicable and the petitioner is entitled to allocate part of its royalties to its store and tenements, it has failed to make any showing as to the amounts which should be so allocated. According to the stipulation of the parties the royalties for 1933 amounted to $4,781.10 and after deducting the full amount of the royalties from the gross income from mining operations the respondent arrived at a net loss of $3,005.88. It is thus apparent that if as much as 60 percent of the royalties paid is allocated to stores and tenements there would still be no amount shown as "net income from the property", and on the record before us there is no basis whatever for allocating any such percentage of royalties to stores and tenements even though the petitioner's theory of allocation be assumed to be correct.

As to 1934 there is no occasion to consider the allocation of either royalties or salaries of officers in view of our holding that petitioner is not entitled to percentage depletion for that year.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

OPPER concurs only in the result.

---

ARUNDELL, dissenting: I can not agree with the holding of the majority opinion that this petitioner is not entitled to percentage depletion for the year 1934. In denying a deduction for percentage depletion the effect is to deny to petitioner any depletion deduction whatever, inasmuch as it has no cost or other basis recognized by statute on which to compute depletion on the unit basis. This denial will operate in perpetuity, unless the law be changed, and in utter disregard of the actual depletion of the properties. I do not believe that this was the intended result of Congress in granting the privilege of a choice under section 114 (b) (4). Neither do I think that such a result necessarily follows from the language used by Congress in the statute.

True, as said in the majority opinion, Congress may limit and condition deductions and the prerequisites to their allowance. But the depletion provisions of the Revenue Acts of 1932 and 1934 are liberalizing, rather than limiting, provisions. The allowance of percentage depletion to coal miners by the Revenue Act of 1932 gave

depletion deductions to taxpayers who, because of a lack of basis, could not take depletion deductions under prior statutes. And to those who had a basis, the statute gave the choice of taking the greater of unit or percentage depletion. In the light of these provisions it is difficult to find any restrictive intent in the allowance of percentage depletion to coal mines. Consideration of these provisions from this point of view indicates the way to the solution of the question here. The sound premise, it seems to me, is that Congress intended to allow depletion deductions by one of the two methods, and intended to give taxpayers a right to elect whichever method they deemed most favorable under the circumstances in each case. From this premise it follows logically that an election is to be made only where a choice between the two methods is available, and that where there is no choice percentage depletion is to be allowed. Election presupposes the existence of the right of a choice between alternatives. *Allis* v. *Hall*, 56 Atl. 637; *Standard Oil Co.* v. *Hawkins*, 74 Fed. 395; *McIntosh* v. *Wilkinson*, 36 Fed. (2d) 807; *Tide Water Oil Co.*, 29 B. T. A. 1208; 48 Harvard Law Review 1281. To say that one is put to his election where he has no choice is to give him nothing more than a "Hobson's" choice. The Acts of 1932 and 1934 both use the terms "elects" and "election." These words become meaningless if applied so as to require an election where there is no right of choice. Where this situation exists and the taxpayer has no alternative from which to choose, then percentage depletion should be allowed under the opening sentence of section 114 (b) (4) that "the allowance for depletion shall be, in the case of coal mines, 5 per centum * * *."

It is not a sound answer to the taxpayer to say that it has lost nothing by the denial of percentage depletion because prior statutes did not give percentage depletion to coal mines. The 1932 and 1934 statutes are designed to correct that situation and to give to coal properties the deductions allowed to other depletable properties under the earlier statutes.