C. H. Mead Coal Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 88687. Promulgated November 15, 1938.

*Edgar J. Goodrich, Esq.,* for the petitioner.
*Frank B. Schlosser, Esq.,* for the respondent.

## OPINION.

TURNER: The sole issue in this proceeding is whether or not the petitioner has complied with the requirements of section 114 (b) (4) of the Revenue Act of 1934 so as to be entitled to a deduction computed on the percentage basis for the depletion of its coal properties.

The allowance of a deduction for depletion of coal and metal mines on a percentage basis was first provided by section 114 (b) (4) of the Revenue Act of 1932, which reads in part as follows:

* * * A taxpayer making return for the taxable year 1933 shall state in such return, as to each property (or, if he first makes return in respect of a property for any taxable year after the taxable year 1933, then in such first return), whether he elects to have the depletion allowance for such property for

succeeding taxable years computed with or without reference to percentage depletion. The depletion allowance in respect of such property for all succeeding taxable years shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for succeeding taxable years shall be computed without reference to percentage depletion. * * *

The corresponding provision of the Revenue Act of 1934, under which petitioner seeks to compute the claimed depletion allowance, is to be found in section 114 (b) (4) of that act. The pertinent provision reads as follows:

* * * A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer * * *.

The petitioner on brief recognizes that the statute governing this case requires that the taxpayer elect affirmatively to take depletion on the percentage basis and that otherwise it automatically follows that the privilege of obtaining percentage depletion is lost even though, as here and in *Dorothy Glenn Coal Mining Co.*, 38 B. T. A. 1154, promulgated of even date, the taxpayer, having no cost basis, has only one choice that will result in a depletion deduction to it. Here petitioner rests its claim on the contention that it has made an election within the meaning of the statute to compute its depletion allowance on the percentage basis. It is claimed, first, that the statement of election filed with its return for 1933 under the provisions of section 114 (b) (4) of the Revenue Act of 1932 was effective for subsequent years and no further statement of election was required under the Revenue Act of 1934 and, second, that even though a new election was required under the provisions of the 1934 Act, and although no election was in fact made at the time of filing or in connection with the 1934 return, the filing of the amended return for 1934 on February 6, 1936, containing the statement quoted in our findings of fact constituted an election within the meaning of section 114 (b) (4) of the Revenue Act of 1934.

As we read the provisions of section 114 (b) (4) of the Revenue Act of 1934, a new election was required on the 1934 return in respect of any property covered by that return, and it matters not that an election to compute depletion on the percentage basis in respect of such property may have been made on the return for 1933. The

language of section 114 (b) (4) of the Revenue Act of 1934 is plain and pointed. It made it mandatory that a taxpayer desiring to compute its allowance for depletion on the percentage basis should so show in "making his first return under this title." As to the meaning of the term "title", section 1 of the Revenue Act of 1934 provides that "the provisions of this title shall apply only to taxable years beginning after December 31, 1933." Furthermore, both the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate, in reporting the bill which was enacted as the Revenue Act of 1934, stated in their reports that to avoid administrative complexities it was thought that a taxpayer making his first return under the "proposed bill" should be permitted to make a new election as to the method of computing his allowance for depletion. The language of the act, when it became a law, not only permitted a taxpayer to make a new election but made it mandatory that a new election be made by providing that "a taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion", and further that "if a taxpayer fails to make such statement in the return, the depletion allowance shall be computed without reference to percentage depletion." Accordingly, as we view the issue, the election made at the time of filing the 1933 return is ineffective for 1934 and subsequent years and the petitioner's case must stand or fall under the terms of its return for 1934.

Admittedly the petitioner did not file with its 1934 return any statement of election to have its depletion deduction computed "with or without regard to percentage depletion." Furthermore, it made no claim on the return for a depletion deduction computed on the percentage basis or any other basis. After the close of the next succeeding taxable year, through an amended return for 1934, it did seek to apply an election claimed to have been made under the Revenue Act of 1932 in connection with the filing of its 1933 return. In fulfillment of the claimed election, the petitioner deducted on the amended return the amount of $33,138.44 as the proper depletion allowance for 1934, computed on the percentage basis. Our question then is whether or not this action, taken by the petitioner in filing with the collector of internal revenue on February 6, 1936, an amended return for the year 1934, constituted an election to take depletion on the percentage basis within the meaning of section 114 (b) (4) of the Revenue Act of 1934. The petitioner argues, first, that the filing of the amended return is proper and that when filed it relates back and becomes a part of the taxpayer's return for that

particular year just as if it had been filed at the same time as the return, and, second, that the respondent's refusal to accept the amended return in the instant case and the statements made therein as a proper election under section 114 (b) (4) of the Revenue Act of 1934 was arbitrary and capricious.

The claim of the petitioner here involved is a claim for the allowance of a deduction against gross income. It is well settled that the allowance of deductions is a matter of legislative grace and that only those deductions specifically permitted by Congress may be taken by any taxpayer. Further, Congress may prescribe such prerequisites and conditions for the allowance of deductions as it sees fit and a claim for deductions must come clearly within the conditions prescribed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, and *Independent Life Insurance Co.* v. *Helvering*, 292 U. S. 371.

Section 114 (b) (4) here involved prescribes that a taxpayer shall state whether he elects to have his depletion deduction for the year 1934, or any subsequent year, computed "with or without reference to percentage depletion." Congress did not stop, however, with the general grant of election as it has done in numerous other statutory provisions permitting elections, but proceeded to prescribe not only the time and manner of making the election but also the effect of failure on the part of the taxpayer to act affirmatively. Congress first said: "A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion", but it then added: "If a taxpayer fails to make such statement in the return the depletion allowance for such property for such year shall be computed without reference to percentage depletion." The facts admittedly show that the petitioner did not make any statement whatever on its 1934 return in respect of depletion and, by the plain wording of the statute, its "depletion allowance * * * shall be computed without reference to percentage depletion." There is nothing in the sentence referred to to indicate that Congress intended that it was to operate unless within the period of limitation the taxpayer should file an amended return in which the contrary method of computing depletion was claimed. By the terms of the statute itself the method of computing depletion was fixed one way or the other when the return was filed, and we know of no power or authority in any taxpayer to make it otherwise by the filing of an amended return. Cf. *George Freese's Sons*, 18 B. T. A. 416. Congress must have intended to have the matter finally and definitely settled at the time of filing the return; otherwise, there could have been no purpose in writing into the statute the sentence prescribing the result of failure on the part of a taxpayer to make an affirmative statement as to deple-

tion. We can not ascribe to Congress any such failure of purpose in respect of the provisions of a statute.

It is argued, however, that the petitioner should not be bound by its failure to comply with the requirements of the statute, because it had been advised by counsel that, since it had no cost basis in respect of the properties under consideration, it was not entitled to either unit or percentage depletion. Generally speaking percentage depletion was not new in either the 1932 or 1934 Acts. As to oil and gas wells it had been in effect since the enactment of the Revenue Act of 1926, and its application in respect of properties where there was no cost basis had been recognized from its inception. Furthermore, in the case of coal and other minerals Congress, in enacting the Revenue Act of 1932, allowed a period of two years for taxpayers holding interests in such properties to familiarize themselves with its meaning and application by making an outright allowance of percentage depletion for the two-year period. After that two-year period, however, a taxpayer was required to act affirmatively in a given manner and at a prescribed time if it desired to retain the benefits of percentage depletion. There were no exceptions. In enacting the Revenue Act of 1934, Congress apparently retained its belief that the two-year period of outright allowance of percentage depletion had been sufficient for coal and other mineral operators to become thoroughly familiar with its scope and effect, and in section 114 (b) (4), *supra*, it left the matter entirely to the taxpayers themselves, making it perfectly clear that the trial period was over and that as to each and every property the method of computing depletion should thereafter be definitely and finally settled at the time of filing the return, either through the affirmative act of the taxpayer or the operation of the statute in the event the taxpayer failed to act. But even under the 1934 Act Congress, by providing for a new election, allowed a taxpayer an additional year, or up to the time of filing its 1934 return, within which it might finally determine and announce its desire for percentage depletion.

In the instant case the failure of the petitioner to act was not because it was unaware of the requirements of the statute, for, according to the facts, it had filed a statement of election with reference to each of its properties with its return for 1933, even though it had no income in that year against which a depletion deduction might be applied. Furthermore at the time of making its return for 1934 it had the matter in mind and the absence of a statement in the return for that year was due to failure on the part of the taxpayer and an attorney employed by it to make a reasonable examination as to the operation and effect of a statute of which both had knowledge. The statute makes no exception for such cases. The petitioner has lost nothing, but by its failure to act has failed to

obtain an added deduction, and, as we have pointed out, Congress may prescribe such prerequisites and conditions for the allowance of deductions as it sees fit and a claim therefor must come clearly within the conditions prescribed. *New Colonial Ice Co.* v. *Helvering*, *supra*, and *Independent Life Insurance Co.* v. *Helvering*, *supra*.

The petitioner relies particularly on the opinion of this Board in *Ralph Leslie Raymond*, 34 B. T. A. 1171, but in that case the statute contained no provision prescribing that the taxpayer's failure to act at the time of filing his return should operate in the negative. The same is true of other cases relied upon by the petitioner. Cf. *William A. Webster Co.*, 37 B. T. A. 800; *Glenn* v. *Ortell Co.*, 13 Fed. Supp. 651; *Scaife & Sons Co.* v. *Driscoll*, 94 Fed. (2d) 664; *Lucas* v. *Sterling Oil & Gas Co.*, 62 Fed. (2d) 951; and *Automobile Loans, Inc.*, 36 B. T. A. 809.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

OPPER concurs only in the result.

---

ARUNDELL, dissenting: For reasons set forth in my dissent in *Dorothy Glenn Coal Mining Co.*, 38 B. T. A. 1154, and for other reasons hereinafter discussed, I am impelled to disagree with the majority holding that denies percentage depletion to this petitioner.

It seems to me that the facts in this case give this petitioner an even stronger claim to an allowance of percentage depletion than is present in the *Dorothy Glenn Coal Mining Co.* case. This petitioner made an election in its 1933 return; it failed to make an election in 1934 because of the advice of counsel. Thereafter, it became convinced that it should have expressed an election and very promptly sought to do so by tendering an amended return. The original return was filed on March 15, 1935, and the amended return on February 6, 1936. While there is no statutory authority for amended returns, "it is well known that the Treasury Department, both in practice and by regulation * * * has been liberal in authorizing and accepting such returns." *Lucas* v. *Sterling Oil & Gas Co.*, 62 Fed. (2d) 951. In that case the taxpayers had exercised an option, granted by regulation, of charging certain expenditures to capital. In February of the following year, after other facts had been ascertained, it filed an amended return claiming the expenditures as operating expenses. The court held that under the facts there present "the initial return may properly be regarded as tentative in its nature, and as not constituting an election. In such case the taxpayer should be permitted to do what he had the right to do in the first instance." In *Morrow, Becker & Ewing, Inc.* v. *Commissioner*, 57 Fed. (2d) 1,

the court recognized the lack of statutory authority for amended returns, but held that it was a breach of discretion for the Commissioner to refuse to accept an amended return wherein the taxpayer, greatly to its own benefit, sought to change from the installment basis to the deferred payment basis of reporting income. Cf. *F. Harold Johnston, Executor*, 33 B. T. A. 551. These cases establish the power in the Commissioner to accept amended returns under circumstances similar to those in the present case, particularly where the taxpayer acts with reasonable promptness to take advantage of a statutory privilege clearly granted. That is the situation here. Before the petitioner's return was due for the next taxable year it sought to secure the statutory privilege of securing percentage depletion. Under the facts here I think that the petitioner should be permitted to do what it had the right to do in the first instance, namely, choose percentage depletion.

MELLOTT agrees with this dissent.