KEHOE-BERGE COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94246.    Promulgated February 7, 1940.

*Robert S. Pasley, C. P. A.*, and *Robert S. Pasley, Jr., Esq.*, for the petitioner.

*E. G. Sievers, Esq., E. O. Hanson, Esq.*, and *W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

OPPER: Petitioner is the lessee of a coal mine. For the tax year 1934 it filed a return disclosing that net income from the property was nonexistent. As of that year the cost of the lease to petitioner was zero. In its return it failed to indicate any election of the percentage depletion alternative provided by the Revenue Act of 1934, section 114 (b) (4).[1]

Upon audit, the revenue agent made such adjustments that net income for the year in question resulted. Petitioner acquiesced therein and paid the tax as computed by the agent, the amount arrived at having made provision for an allowance to petitioner of depletion based upon the percentage method. In 1935 petitioner's return showed a net income and percentage depletion was deducted. No amended return for the year 1934 has been filed and no return of any kind for that year on behalf of petitioner claims deduction on the percentage basis. Respondent having determined that petitioner's failure to elect to take percentage depletion in the first return filed after the enactment of the Revenue Act of 1934, requires the disallowance of depletion calculated by this method for both the years 1934 and 1935, has found the deficiencies which raise the only point of present controversy.

The section in question was the subject of two recent decisions of the Board, *C. H. Mead Coal Co.*, 38 B. T. A. 1163, and *Dorothy Glenn Coal Mining Co.*, 38 B. T. A. 1154. The former case was reversed by the Fourth Circuit Court of Appeals, *Mead Coal Co.* v. *Commissioner*, 106 Fed. (2d) 388. No appeal was taken in the latter case.

The salient distinction between these two cases, and one we consider significant in the proper treatment of the present proceeding,

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \*

(4) PERCENTAGE DEPLETION FOR COAL AND METAL MINES AND SULPHUR.—The allowance for depletion under section 23 (m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section.

is that in the *Mead* case an amended 1934 return claimed depletion on the percentage basis, whereas in the *Dorothy Glenn* case no amended return was filed. The reversal of the Board's decision in the *Mead* case was limited to the effect of the amended return and it was there decided that such a return conformed to the requirement of the statute that the election to take depletion on the percentage basis should be manifested in the "first return" filed for any year beginning with 1934. Cf. *Haggar Co.* v. *Helvering*, 308 U. S. 389. The Court was of the opinion that an amended return filed prior to the return for the following year was timely and should be accepted as a substitute for the return originally forwarded. But cf. *Riley Investment Co.* v. *Commissioner*, 108 Fed. (2d) 713. The Board had taken a contrary view, but the question of timeliness is not presented by the record here.

In the Board's opinion in the *Dorothy Glenn* case this distinction was discussed (p. 1159) :

* * * It is unlike the *Mead* case in that the petitioner * * * has not at any time made a request in connection with any return, amended or otherwise, for percentage depletion. * * *

Petitioner had actually specified an election of unit depletion in its 1934 return but it argued that its situation was such that it could obtain no benefit from this, and, therefore, the case should be treated as though no election had been made. The Board's opinion comments (p. 1161) :

* * * If, on the other hand, it is not possible, as the petitioner contends, for a taxpayer to elect to take depletion on the unit basis when on the unit basis no deduction will result, the petitioner is in the position of having failed to make any election with or without regard to percentage depletion, and under such circumstances Congress has said "the depletion allowance * * * shall be computed without reference to percentage depletion." *C. H. Mead Coal Co.*, *supra*. The petitioner has lost no deduction to which it was at any time entitled, but through its failure to act as Congress prescribed has failed to obtain an added deduction.

The argument of petitioner, which is the same as that made here, that it was in fact deprived of the privilege of election since only by claiming percentage depletion could it obtain the benefit of any deduction, was disposed of as follows:

* * * The petitioner's reasoning is that two remedies or rights must actually exist and if a party elects to take a supposed right or benefit which is in fact nonexistent he is not precluded thereby from later claiming the other. We are not here concerned with the doctrine of election of remedies, however, but with a question of statutory allowance of a deduction from gross income, and, as we have pointed out in *C. H. Mead Coal Co.*, *supra*, the allowance of a deduction is a matter of legislative grace and Congress may prescribe such prerequisites and conditions for the allowance thereof as it sees fit and a claim for deduction

must come clearly within the conditions prescribed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, and *Independent Life Insurance Co.* v. *Helvering*, 292 U. S. 371.

These considerations lead to the result that on the authority of *Dorothy Glenn Coal Mining Co.*, *supra*, petitioner's failure to elect at any time to take percentage depletion for the year 1934 deprives it of that privilege for that and subsequent years; and that nothing contained in the opinion reversing *C. H. Mead Coal Co.*, *supra*, is opposed to that conclusion. See also, *Commodore Mining Co.*, 40 B. T. A. 347; *William B. Scaife & Sons Co.*, 41 B. T. A. 278. But apart from authority, it seems to us that the path of logic leads to the same destination.

Although it is true that in the years now in issue petitioner was precluded from deducting unit depletion by reason of the lack of any cost basis, it by no means follows that in the case of this petitioner on the present record, or of this type of taxpayers generally, such a condition must be regarded as permanent. Development costs are a commonplace in the mining industry and improvements, extensions, and other capital expenditures can, under appropriate circumstances, place a mining enterprise in a position where a cost basis would be created. *Enterprise Coal Co.* v. *Phillips*, 12 Fed. Supp. 49, affirmed *per curiam*, 84 Fed. (2d) 565; *New Quincy Mining Co.*, 36 B. T. A. 376; *Trace Fork Mining Co.*, 15 B. T. A. 872; see *Blockton Cahaba Coal Co.* v. *United States*, 24 Fed. (2d) 180; *Sultana Oil Corporation*, 40 B. T. A. 1196; cf. G. C. M. 13954. That being so, no one without the gift of unlimited prophecy can determine categorically that a choice between unit depletion on the one hand and percentage depletion on the other will never come into being and prove beneficial.

The method adopted by Congress for dealing with the question of depletion in the case of mines, as manifested by the legislative scheme disclosed by section 114 (b) (4), seems to us to make it apparent that a taxpayer is not to be allowed to change its mind with respect to the method of calculating depletion. Yet petitioner's contention would present it with that opportunity. If its position is correct, it has never made the election described in section 114. It would, therefore, be free to argue that the opportunity to elect is still open. It might even contend in some later year that its election of unit depletion in 1934—by the silence which the section makes as eloquent as any affirmance—would carry over to a later year and entitle it to that method without further action on its part. Cf. petitioner's argument in *C. H. Mead Coal Co.*, *supra*. On either hypothesis, unless the election was made in 1934 it would be impossible to say, under the

language of the governing statute, when it had been made, or what it was. The precision obviously aimed at by the legislation would be wholly lacking. And if the election was made in 1934 it must have resulted, as the provision clearly requires in such circumstances, in a renunciation of the percentage method.

Upon first examination, it may seem a harsh and unnecessary emphasis which we thus place on the mechanical fact of petitioner's declaration of its choice of method. It might be said that we are now deciding against petitioner for its inconsequential failure to indulge in the futile gesture of electing percentage depletion in its original return; or at least of filing an amended return after the revenue agent's adjustments, see *Mead Coal Co.* v. *Commissioner, supra;* but cf. *Riley Investment Co.* v. *Commissioner, supra.* The answer must be that the gesture would not have been futile; the failure was not inconsequential. Only by one or the other of those acts could petitioner's election have been signified in a manner that would bind it for the future. And only a binding election not subject to alteration can conform to the general plan. If we remit that all-important prerequisite, we place petitioner in a favored position and one which is evidently forbidden by the legislative scheme. Under the express language of the statute no return filed for 1935 or any subsequent year can be regarded as an election or commitment of any kind. As to this petitioner, that significance was reserved for the 1934 return. And under the equally explicit statutory language the election was made in 1934 as effectively by petitioner's silence as it could have been by any form of words. We do not consider ourselves permitted so to modify the legislative expression as to bestow upon an act the opposite effect from that expressly imputed to it; or as to permit an election made in a return for a subsequent year to have the same effect as though made for the previous year for which it is expressly required.

*Decision will be entered under Rule 50.*