Edward Crump, Jr., Inc. v. Commissioner.
Edward Crump, Jr., Inc. v. Commissioner
Docket Nos. 11353, 10875.
United States Tax Court
1947 Tax Ct. Memo LEXIS 94; 6 T.C.M. (CCH) 999; T.C.M. (RIA) 47244; August 29, 1947
Sidney B. Gambill, Esq., and William Wallace Booth, Esq., 747 Union Tr. Bldg., Pittsburgh, Pa. *95 , for the petitioner. Hobby M. McCall, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings seek redeterminations of deficiencies in tax as follows: 1941
Income tax
$ 1,918.46
Excess-profits tax
2,427.32
1942
Income tax
Declared value excess-profits tax
37.90
Excess-profits tax
13,446.48
The determination for 1941 is said to have been a protective measure by respondent. Both parties now agree that the contract in question was not completed until 1942 and that the issue presented thereby is climinated. Petitioner claims an overpayment for the year 1941. The remaining issue is petitioner's right, under Internal Revenue Code, section 736 (b), to compute its excess-profits income from long-term contracts upon a percentage of completion method of accounting. Findings of Fact Petitioner is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 4031 Bigelow Boulevard, Pittsburgh, Pennsylvania. Petitioner kept its books and filed its tax returns on the calendar year basis. Its Federal income *96 and excess-profits tax returns for the years 1941 and 1942 were filed with the collector of internal revenue for the twenty-third collection district of Pennsylvania. Petitioner was organized as a corporation in 1930, and since that time has been engaged in the business of building construction. In its Federal income tax returns for the years 1938 through 1942, it reported its profits from long-term contracts, as defined in section 29.42-4 of the Commissioner's Regulations 111, on the completed contract method, and so signified in its income tax returns for those years. In August of 1940, petitioner entered into a contract with Pittsburgh Business Properties, Inc., for alterations and additions to the McCreary Building, located on Wood Street, extending from Oliver Avenue to Sixth Avenue, in downtown Pittsburgh, Pennsylvania. The contract provided for a total payment to petitioner of $369,195, subject to additions and deductions. Work was commenced on the contract in the fall of 1940 and continued throughout 1941. Prior to the end of 1941, several change orders came into existence, providing for changes in the contract by way of both omissions and additions. Additional change orders *97 came into existence in 1942. By the end of 1941 the contract (calling for an expenditure of $369,195) was 98.24 percent complete, and some of the 1941 change orders were complete. The entire contract, including the original contract and the change orders of 1941 and 1942, was completed in the spring of 1942. Edward Crump, Jr., is president and treasurer of petitioner. George J. Sabel, a certified public accountant of Pittsburgh since 1928 and a senior partner of the accounting firm of George J. Sabel & Company, is also an officer of petitioner. Sabel has been in charge of keeping petitioner's book and preparing its tax returns for the last few years, and petitioner's income and excess-profits tax returns for the years 1941 and 1942 were prepared under his supervision. Prior to filing petitioner's 1941 returns, Crump was familiar with the fact that higher excess-profits tax rates would apply in 1942. He discussed the matter with Sabel and told Sabel that inasmuch as the contract with Pittsburgh Business Properties, Inc., (providing for an expenditure of approximately $369,000) was practically completed at the end of 1941, Sabel should report the profit therefrom in 1941. Sabel, in *98 preparing petitioner's income and excessprofits tax returns for the year 1941, reported the profit from the work done in 1941 on the Pitsburgh Business Properties, Inc., contract, as amended by the 1941 change orders, in the 1941 income and excess-profits tax returns. The profit thus reported from the Pittsburgh Business Properties, Inc., contract in the 1941 returns was $25,359.26. In petitioner's 1942 income and excessprofits tax returns (which were likewise prepared under Sabel's supervision) the remaining profit from the Pittsburgh Business Properties, Inc., contract, as amended by the 1941 and 1942 change orders, was reported. The profit thus reported in the 1942 returns was $6,778.29. The total profit from the Pittsburgh Business Properties, Inc., contract, as amended by the 1941 and 1942 change orders, amounted to $32,137.55. The contract between petitioner and Pittsburgh Business Properties, Inc., as amended by the various change orders, is the only long-term contract, as defined in section 732 (b) of the Internal Revenue Code, that petitioner has ever had. Respondent, in his determination of the deficiencies for the years 1941 and 1942, included *99 the entire profit of $32,137.55 from the Pittsburgh Business Properties, Inc., contract in each of these years. Respondent concedes that that amount was included in the 1941 determination purely as a protective measure, in the event it should be held that the Pittsburgh Business Properties, Inc., contract was completed in 1941. The parties agreed at the hearing that the contract was not completed until 1942. Petitioner's corporation income and declared value excess-profits tax return and its corporation excess-profits tax return for the calendar year 1941 were filed March 16, 1942, prior to the enactment of section 736 (b) of the Internal Revenue Code. Petitioner's corporation income and declared value excess-profits tax return and its corporation excess-profits tax return for the calendar year 1942 were filed May 15, 1943, subsequent to the enactment of section 736 (b) on October 21, 1942, and to the promulgation of section 35.736 (b)-2 of Regs. 112. There is no mention of petitioner's contract with Pittsburgh Business Properties, Inc., in either of petitioner's 1941 or 1942 corporate returns, nor is the income from the contract identified in any way in *100 these returns. In its 1942 return - "QUESTIONS "(g) Does this return involve an adjustment of the excess profits tax liability due to the application of the sections specified in (1) below? "was answered 'No.' The (1) referred to reads as follows: * * * If the answer is 'yes' "(1) Check the appropriate sections and submit schedules showing computation: * * * 736 (b) [*] * * * "No indications appear." Opinion Petitioner's right to the relief presently claimed, if it had exercised the election specified in section 736 (b) hardly seems debatable. The only questions are whether it can, on the one hand, secure that right, notwithstanding its failure to make a specific election, or on the other, has pursued such a course of action as to be tantamount to a formal election under that section. A negative answer to both questions seems to us inescapable. That an express election is required to permit a "completed-contract" system taxpayer to report on a percentage of completion basis is apparent from even a casual reading of the section. [1] The time and manner of making the election are specified, and what is of greater moment, so is its effect. Mother Lode Coalition Mines Co. v. Helvering, 317 U.S. 222; *101 Kehoe-Berge Coal Co., 41 B.T.A. 282, affirmed (C.C.A., 3rd Cir.), 117 Fed. (2d) 439; cf. Pittston-Duryea Coal Co. v. Commissioner (C.C.A., 3rd Cir.), 117 Fed. (2d) 436. If Congress had intended that the benefits of a change in reporting could be available without the exercise of so carefully phrased a choice, it needlessly employed many lines of legislative phrasing. McDonald v. Thompson, 305 U.S. 263, 266. *102 The only vehicle possible, under the facts here present, by which the election could have been made was petitioner's 1942 excess-profits tax return, filed in May, 1943, some seven months after section 736 (b) was enacted. Not only does this return fail to indicate the decision to resort to a percentage of completion method, but it expressly states the opposite. Under "Questions," petitioner answered "No" to inquiry (g) which reads "Does this return involve an adjustment of the excess profits liability due to the application of the sections specified in (1) below? * * * (1) Check the appropriate sections * * *; 736 (b) [*] ."The applicable block is left vacant. There having existed the now familiar necessity for declaring an unequivocal choice as between alternative methods - cf. Riley Investment Co. v. Commissioner, 311 U.S. 55 - and petitioner having not only failed to designate, but in fact expressly renounced the elective change in method, rejection of its claim to adopt it is required. The deficiency is sustained. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code, section 736(b): "(b) Election on Long-Term Contracts. - In the case of any taxpayer computing income from contracts the performance of which requires more than 12 months, if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, it may elect, in its return for such taxable year for the purposes of this subchapter, or in the case of a taxable year the return for which was filed prior to the date of the enactment of the Revenue Act of 1942, within 6 months after the date of the enactment of such Act [Oct. 21, 1942], to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, such income upon the percentage of completion method of accounting. Such election shall be made in accordance with such regulations and shall be irrevocable when once made and shall apply to all other contracts, past, present, or future, the performance of which required or requires more than 12 months. The net income of the taxpayer for each year prior to that with respect to which the election is made shall be adjusted for the purposes of this subchapter, including the computation of excess profits net income in each taxable year of the base period under section 711(b), to conform to such election but for purposes of chapter 1, the tax imposed by this subchapter for any prior taxable year on account of the adjustment required by this subsection shall be considered a part of the tax imposed by this subchapter for the taxable year in which such income is, without regard to this subsection, includible in gross income. Income described in this subsection shall not be considered abnormal income under section 721."↩